UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JAMES A. PIGGEE, individually and as an officer of G.E.M.S., Inc. and DOES 1-149, yet unidentified African Americans, | ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 2:08-CV-107-PPS |
| v. | ) ) | |
| COLUMBIA SUSSEX CORPORATION d/b/a BATON ROUGE MARRIOTT and KELLY JO BOWMAN, in her personal and official capacities, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER**

Plaintiff James Piggee reserved 41 rooms at the Baton Rouge Marriott but the Marriott cancelled the reservation at the last minute leaving him and a large group of high school seniors stranded. Piggee's principal claim is that the cancellation was racially motivated. The defendant Baton Rouge Marriott wants the case to be heard in its back yard in Louisiana. Piggee, of course, prefers his own home turf here in the Northern District of Indiana. The parties battled it out in front of Magistrate Judge Cherry and he denied the Marriott's Motion to Transfer Venue. [DE 24]. Presently before me is the Marriott's Motion for Review of Judge Cherry's order. Because Judge Cherry's order was not clearly erroneous, the Marriott's motion is **DENIED.**

**BACKGROUND**

James Piggee's amended complaint alleges civil rights violations and breach of contract against the Defendant Columbia Properties Baton Rouge Ltd. d/b/a/ Baton Rouge Marriott

("Baton Rouge Marriott") and one if its employees. Piggee helps run an organization titled G.E.M.S., short for "Giving Education Meaningful Substance." Am. Complaint [DE 10], ¶¶ 5, 9. Part of the group's mission is to escort groups of African American students to Historically Black Colleges and Universities each spring to expose them to different educational opportunities across the country. *Id*. Piggee claims in his complaint that the Baton Rouge Marriott agreed to provide 41 rooms for Piggee and 149 of his students and chaperones, but that the hotel then backed out of the agreement, leaving Piggee and his group in a lurch and with no boarding for its trip. *Id*., ¶¶ 10-18.

## DISCUSSION

Federal Rule of Civil Procedure 72(a) governs the appeal of a magistrate judge's order on a non-dispositive motion. In reviewing an order, the district judge "shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). I have to be left with a definite and firm conviction that a mistake has been made before I will overturn a non-dispositive decision of the magistrate judge. *Weeks*, 126 F.3d at 943. Indeed, it is "extremely difficult to justify alteration" of such orders. *See* Wright, Miller& Marcus, Federal Practice and Procedure: Civil 2d § 3069 (West 1997).

Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This is a discretionary call and in making it district courts should employ a "flexible and individualized analysis." *Stewart Org., Inc. v. Ricoh*

2

*Corp.*, 487 U.S. 22, 29 (1988). As an initial matter, there are three things to consider: (1) whether venue is proper in the transferor district; (2) whether venue and jurisdiction are proper in the transferee district; and (3) whether the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice. *See Stewart Org.,* 487 U.S. at 29-31; *First Nat'l Bank v. El Camino Res., Ltd.,* 447 F.Supp.2d 902, 911 (N.D.Ill.2006). The first two elements are not in dispute here.

As for the third factor, there is both a private interest to consider – that is, the convenience of the parties and witnesses – and a public interest in justice. But in all respects, "[t]he movant ... has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir.1986). *See also Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *IP Innovation L.L.C. v. Lexmark Intern., Inc.*, 289 F.Supp.2d 952, 953-54 (N.D. Ill. 2003). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re: Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir.2003) (quotation marks omitted).

In examining the private interests, *i.e.,* the convenience of the parties and witnesses, the courts are guided by several considerations including: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses. *See First Nat'l Bank,* 447 F.Supp.2d at 911-12; *IP Innovation,* 289 F.Supp.2d at 954. *See also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947), *superceded by statute* 28 U.S.C. § 1404. As a rule, when the parties reside in different states, "there is no choice of forum that will avoid imposing inconvenience;

3

and when the inconvenience of the alternative venues is comparable there is no basis for a change in venue; the tie is awarded to the plaintiff." *Nat'l Presto,* 347 F.3d at 665.

Judge Cherry properly laid out these considerations and analyzed them one at a time. In balancing the convenience of the parties, he determined that the financial burden of travel would be more easily born by the Baton Rouge Marriott and its representatives than by Piggee, an educator, and his students and chaperones. Magistrate Order [DE 21] at 5-6. Judge Cherry took into account that the convenience of the parties involves consideration of "their abilities to bear the expense of trial in a particular forum." *College Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1056 (N.D. Ill. 1995)(quoting *Heller*, 713 F. Supp. at 1130-31). Baton Rouge Marriott takes exception with Judge Cherry's inclusion of the students and chaperones in this analysis, because they are not yet named individually as plaintiffs and only as "DOES 1-149 yet unidentified African Americans." Since, as Judge Cherry noted, Piggee indicated he will seek leave to amend his complaint to include those individuals' names, it was only sensible to include their burdens into the equation. Magistrate Order [DE 21] at 5-6.

Baton Rouge Marriott's citation to a single, unpublished, out-of-circuit district court case in support of its position, *P.E.A. Films, Inc. v. Metro*, 1998 WL 54610 (S.D.N.Y. Feb. 10, 1998), does not demonstrate that Judge Cherry was "clearly erroneous or contrary to law." Moreover, the *P.E.A. Films* case was a much different case. It involved an unknown number of unnamed class action plaintiffs, where the class encompassed all holders of rights to motion pictures and television films with works improperly duplicated in Europe. *P.E.A. Films*, 1998 WL 54610 at *1. The court wrote in *P.E.A. Films* that "it is impossible, from a practical standpoint, to consider anything other than PEA's claims against MGM. The specifics of the claims of other

4

members of the alleged class and the specifics of the defenses of the unidentified defendants are largely unknown." *Id*. The same can not at all be said for the students and chaperones on Piggee's trip, who are not only limited in number but have a more relevant and identifiable interest in participating in a trial than the theoretical class-action plaintiffs at issue in *P.E.A. Films*. Nor are they mere hypothetical parties awaiting class certification, but people who were involved in the very heart of the controversy.

The fact that the students participating in the college tour described in the complaint have graduated high school does not swing the pendulum back in favor of transferring the case to Louisiana, despite Baton Rouge Marriott's contentions to the contrary. As Judge Cherry noted in his order, it is reasonable to assume that most of the graduating students remain in or close to Indiana, regardless of whether they moved on to college or started working. Magistrate Order [DE 21] at 6. There are, in addition to those students, twelve adult chaperones who are even more likely to be current Indiana residents. Judge Cherry was correct in finding that the competing conveniences of the parties weighs against transfer.

The next factor to consider is the convenience of the witnesses and, relatedly, the relative ease and access to sources of proof. Baton Rouge Marriott attempts to even up the score by arguing that, in order to show a failure to mitigate damages, it will have to call as many as 20 to 50 locally competing hotel representatives to establish the availability of other rooms at the time of the plaintiff's trip. This strikes me as a wild overstatement. It's difficult to believe that such a large number of witnesses would really be necessary to prove what would be a relatively straightforward point regarding hotel availability. Presumably, the point could be made through the use of documentary evidence and Federal Rule of Evidence 1006 – which authorizes the use

of summaries in trial. But even if that many witnesses were necessary, the problems created by a lack of subpoena power and inconvenience for travel from Louisiana to Indiana could be easily remedied via the presentation of testimony by deposition. *See* Magistrate Order [DE 21] at 6. And even adding up the inconvenience to all of the witnesses proposed by Baton Rouge Marriott, including the employees who were there for the events described in the complaint and the 20 to 50 competing hotel representatives, their numbers would still not equal the potential 150 students and chaperones who may serve as witnesses for Piggee's side of the story and potentially to the issue of damages. Judge Cherry took these facts into account when determining that this factor weighed against transfer as well, and I cannot say his analysis was clearly erroneous. Magistrate Order [DE 21] at 6-7.

As for consideration of the situs of events, the material occurrences were essentially the faxes and phone calls between Piggee, in Indiana, and the Baton Rouge Marriott, in Louisiana, representing the reservation for hotel space and subsequent cancellation. Amended Complaint [DE 10] at ¶¶ 10-13. The existence, or lack thereof, of alternative hotel space in Baton Rouge renders this factor slightly in favor of the Defendant, but not enough to upset the conclusion that, overall, the private interests weigh against transfer. And they certainly do not warrant a finding that Judge Cherry's evaluation of the private interests was definitely mistaken, especially when the balancing of private interests calls for "a tie" to go to the plaintiff.

The courts must also consider the public interest of justice in deciding whether to transfer under § 1404(a). The factor "is not a definite standard," *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir. 1986), but it "relates ... to the efficient functioning of the courts, not to the merits of the underlying dispute," *Coffey,* 796 F.2d at 221. Nevertheless, it is an important factor and "may be

6

determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Id.* at 220. As with the private interest analysis, the public interest analysis is also guided by several considerations. Those considerations include "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *First Nat'l Bank,* 447 F.Supp.2d at 912 (quotation marks omitted). *See also Heller,* 883 F.2d at 1293; *IP Innovation,* 289 F.Supp.2d at 955. *Accord Gulf Oil,* 330 U.S. at 508-09 (analyzing transfer under the common law doctrine of *forum non conveniens* ).

Here again, Judge Cherry properly evaluated all relevant considerations. For example, he correctly noted that the outcome of the case would not only affect the Louisiana hotel business, but equally affect the Indiana individuals who suffered the alleged discrimination. Magistrate Order [DE 21] at 8. He also reasoned that an examination of Louisiana hotel booking practices naturally involves individuals who travel from outside of Louisiana, and that the issues of alleged discrimination are not unique to Louisiana. *Id*. Lastly, he took into account the fact that Piggee's complaint raised claims under federal laws, and that even if Louisiana law were to come into play, the interests of justice remain neutral where the state law in question is neither complex nor unsettled, as appears to be the case for this matter. *See id*. at 8-9 (citing *First Nat'l Bank,*447 F. Supp. 2d at 914.

Recognizing that it was a defendant's burden to demonstrate that the combination of public and private factors must weigh in favor of transfer to overcome a plaintiff's choice of forum, Judge Cherry denied the Baton Rouge Marriott request. Magistrate Order [DE 21] at 3, 9. The Marriott's burden is even higher at this juncture because deference is owed to a magistrate's

7

order before overturning it on a Rule 72(a) motion. Applying the "clearly erroneous" standard, I cannot say that I am left with a definite and firm conviction that a mistake was made. Rather, I am convinced that Judge Cherry's decision to deny transfer was the correct one.

## CONCLUSION

For the foregoing reasons, Baton Rouge Marriott's Objections and Motion to Review the Magistrate Judge's Order Denying Its Motion to Transfer [DE 24] is **DENIED**.

**SO ORDERED.**

ENTERED: April 23, 2009

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT