UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES A. PIGGEE, individually, and as an officer of G.E.M.S., Inc., and DOES 1-149, yet unidentified African Americans,<br><br>     Plaintiffs,<br><br>     v.<br><br>COLUMBIA SUSSEX CORP.,<br>COLUMBIA PROPERTIES BATON<br>ROUGE, LTD., d/b/a/ Baton Rouge<br>Marriott,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    2:08-CV-107-PPS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

In April 2006, Plaintiff James Piggee booked a block of rooms at the Baton Rouge Marriott as part of a trip to expose a group of northwest Indiana African-American teenagers to colleges in the South. The day after booking the rooms, the Marriott cancelled the agreement, leaving the group without accommodations in Baton Rouge. Piggee filed this action, alleging that the Marriott acted because of racial discrimination, violating the Plaintiffs' civil rights under Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.*, and 42 U.S.C. § 1981 [DE 44]. The Plaintiffs also claim that Marriott breached its contract with Piggee [*Id.*] For simplicity, I will refer to the plaintiffs collectively as "Piggee," who is the lead plaintiff. The Marriott has moved for summary judgment on the § 1981 and Title II claims. After obtaining a number of extensions of time in which to reply to the pending summary judgment motion, Piggee filed an untimely response, and I granted the Marriott's motion to strike the response [DE 134]. The issue now before me is whether summary judgment is proper on Piggee's two discrimination claims. I have concluded, as discussed below, that summary judgment is appropriate.

## BACKGROUND

James Piggee, now a retired high school and middle school principal, is the head of an organization called GEMS [DE 108-1 at 3-4]. GEMS' laudable purpose is to expose young people to educational opportunities, and specifically, college life [*Id.* at 4]. For over twenty years, Piggee has taken high school students on bus tours of historically black colleges and universities [*Id.*]. In April 2006, Piggee prepared to take 150 students and 21 chaperones on the annual trip [*Id.* at 8, 18]. As part of his preparations, Piggee tried to book approximately forty hotel rooms at the Baton Rouge, Louisiana Marriott hotel [*Id.* at 9]. On April 5, 2006, Piggee entered into an agreement securing forty-two rooms for the night of April 20, 2006 [DE 44-2 at 1]. Piggee provided his credit card information to pay for the rooms [*Id.* at 2]. Piggee executed the agreement on behalf of GEMS, and Kelly Jo Bowman signed on behalf of the Marriott [*Id.* at 3].

The agreement identified Piggee as the CEO of GEMS, located in Gary, Indiana, but did not provide any information about the identities of the individuals who would be occupying the rooms or indicate their races [*Id.*]. At the time that Piggee spoke with Bowman, he told her that he would be bringing 150 high school students to the hotel, but there were no questions asked regarding the race of the students attending the trip [DE 108-1 at 10, 15, 36].

According to Piggee, at the time that he spoke to Bowman, the Marriott did not know Piggee's race or the race of the students attending the trip [*Id.* at 10, 13, 15, 36]. Following the execution of the contract, Piggee provided the Marriott with a rooming list that provided names of students, but did not provide their races [*Id.* at 13-15]. No one associated with the group had any contact with the Marriott other than Piggee [*Id.* at 28, 30]. Piggee did not tell anyone at the Marriott that the hotel patrons would be African-Americans [*Id.* at 36].

According to Piggee's deposition testimony, the day after the contract was executed,

Bowman called back and said that the Marriott could not accommodate the group, and gave no reason why [*Id.* at 17, 34-35].  This testimony was in opposition to Piggee's sworn interrogatory responses, according to which "Bowman stated that the reason they would be unable to accommodate the group was due to the size of the party and that it was a 'youth group'" [*Id.* at 34; DE 108-2 at 3].  Before leaving on the trip, Piggee attempted to make other arrangements for hotels by phone, but he was unable to do so [DE 108-1 at 11-12, 35].  On the night of April 20, 2006, Piggee and the GEMS students stopped at a few Baton Rouge area hotels, but were not able to find a suitable hotel in which to stay, and they drove through the night to Arkansas [*Id.* at 18, 26-27, 35].

At his deposition, Piggee testified that he came to the conclusion that the Marriott had denied rooms to the GEMS students because the Marriott saw that they were from Gary, Indiana, and assumed that they were African-Americans, or because they assumed that a group of students might "tear up the hotel" [*Id.* at 14-16].  Piggee also testified that he had asked Bowman how far the Marriott was located from the campus of Southern University, which he also thought suggested that he and the students were African-American, and he may have told her that the group was touring historically black colleges and universities [*Id.* at 15, 36].  Piggee had no information regarding the hotel's treatment of other African-Americans [*Id.* at 15-16] and no information regarding the hotel's treatment of white patrons [*Id.* at 36].

## **DISCUSSION**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.  The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party.

*Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Local Rule 56.1 sets forth specific requirements for both the party moving for summary judgment as well as for the non-moving party. It directs the moving party to file a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed." N.D. Ind. L.R. 56.1(a). The party opposing the summary judgment motion must respond to each of the purported undisputed facts with a "Statement of Genuine Issues" setting forth "the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. Ind. L.R. 56.1(b)(2). Here, Piggee's statement of contested facts has been stricken for failure to comply with the rules (the latest in a long line of failures to follow rules and court orders), and thus, he has not disputed any of the facts set forth in the Defendants' Statement of Material Facts. The Defendants' allegations in their Statement of Material Facts will therefore be deemed admitted unless they are unsupported by the evidence or contradict each other. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[w]e have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission"); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000) (same).

Nevertheless, even where an opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only "*if appropriate* - that is, if the motion demonstrates that there is no genuine issue of material fact *and* that the movant

is entitled to judgment as a matter of law." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995) (quoting *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (emphasis in original)). So even though when all of the material facts are undisputed, I still must ascertain that judgment is proper "as a matter of governing law." *Id.* (citations omitted).

The Marriott has moved for summary judgment on Piggee's claims under 42 U.S.C. § 1981, which prohibits discrimination in the making and enforcing of contracts, and Title II of the Civil Rights Act of 1964, which prohibits discrimination in public accommodations.[1] Section 1981 is a "broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing of contracts." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393 (7th Cir. 2007). Making and enforcing of contracts is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Pourghoraishi v. Flying J Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). "To establish a prima facie claim of such discrimination, [Piggee] must show that (1) he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Id.*

A plaintiff can prove intent to discriminate by either using the direct method, where the plaintiff offers direct proof of discriminatory intent, or the indirect method, where the plaintiff presents indirect or circumstantial evidence by employing the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Oates v. Discovery Zone*, 116 F.3d 1161, 1169 (7th Cir. 1997). The focus of the direct method of proof is "whether the evidence 'points directly' to a discriminatory reason" for the defendant's actions. *Atanus v. Perry*, 520

---

[1] In the present motion [DE 107], the Marriott has not moved for summary judgment on Piggee's contract claims, and the court will not address those claims here. The Marriott has, however, filed another motion seeking summary judgment on the contract claims of all plaintiffs other than GEMS [DE 130], which the parties are briefing separately. That motion will be addressed by the Court at a later date.

F.3d 662, 671-72 (7th Cir. 2008).  As for the indirect method of proving intent, outside of the employment context, courts have modified the *McDonnell Douglas* paradigm so that the plaintiff must show: (1) the plaintiff is a member of a racial minority; (2) he attempted to make or enforce a contract; (3) the defendant denied him the right to make or enforce the contract; and (4) the defendant treated the plaintiff less favorably than similarly situated white people.  *Williams v. Southern Illinois Riverboat/Casino Cruises*, 2008 WL 1776461, at *6 (S.D. Ill. April 16, 2008).

Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, guarantees equal access to public accommodation.  Under Title II, the "plaintiff has the burden of establishing by a preponderance of the evidence a prima facie case of discrimination" and must show that the plaintiff was a member of a protected class, that he was not permitted to use a public accommodation, and that others, outside the protected class, were permitted to do so.  *Hornick v. Noyes*, 708 F.2d 321, 325 n.8 (7th Cir.1983).  The *McDonnell Douglas* burden-shifting analysis is also applicable to Title II cases.  *Id.*

Turning first to the § 1981 claim, there is no question that Piggee is African-American, that the Marriott and Piggee entered into a contract, and that the Marriott subsequently cancelled the contract.  So if Piggee proceeds under the direct method of proof, the only issue on summary judgment is whether the Marriott cancelled the contract with a discriminatory intent.  In other words, the motion hinges on whether the Marriott discriminated against Piggee and cancelled the contract because Piggee was black.  But Piggee's claim fails because he cannot show that the Marriott even knew that he was black, and it is "impossible" for a defendant to intend to discriminate on the basis of race if the defendant didn't know the plaintiff's race. *Pourghoraishi*, 449 F.3d at 759.

Piggee testified at his deposition that when he spoke to Bowman, he didn't tell her that he was black, and she didn't ask.  Bowman didn't ask questions about the race of any of the people

who would be staying at the Marriott, and Piggee, the only person from GEMS who spoke to anyone at the Marriott, didn't offer that information. Piggee further testified that at the time he booked the contract with the Marriott, he doubted that anyone knew what his race was. And when Piggee followed up with the Marriott by sending it a rooming list, the list did not state the race of any of the people on it. There is dispute (albeit a one-sided one) about whether the Marriott gave Piggee a reason for cancelling the contract: in his sworn interrogatory responses, he said that the Marriott said that they couldn't accommodate the party because of its size and because it was a youth group; whereas in his deposition, Piggee testified that the Marriott gave no reason whatsoever for the cancellation. But regardless of which is true – or even if either is true – neither indicates that the Marriott had any idea that the party was comprised of African-Americans.

So there is no evidence that directly shows that the Marriott even knew that the GEMS group was black and that they cancelled the contract for that reason. To the contrary, the direct evidence is that the Marriott had no notice at all that Piggee and the GEMS students were black. And whether the Marriott told Piggee that they couldn't accommodate his party because it was too big and it was a youth group, or they didn't say a word, neither version is evidence that the Marriott cancelled the reservation because the patrons were black.

Piggee has not presented direct evidence of discrimination, but under the direct method, a plaintiff can also prevail by constructing a "'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). Such circumstantial evidence can include "suspicious timing, ambiguous statements, behavior toward or comments directed at other[s] . . . in the protected

group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 307 (7th Cir. 2012).

But Piggee's evidence fails to construct a "convincing mosaic." Here, the only pieces of circumstantial evidence that Piggee could conceivably marshal to prove that the Marriott knew that the GEMS group contained African-Americans, and thus decided to cancel the contract, are: 1) Piggee told Bowman that the group was from Gary, Indiana; 2) Piggee asked Bowman how far the hotel was located from Southern University, a historically black university; and 3) Piggee *may* have told Bowman that the group was visiting historically black colleges and universities.

Even drawing all inferences in Piggee's favor, this evidence falls short of creating a "convincing mosaic" of discrimination. The evidence is simply too thin to support the conclusion that after it booked the contract, the Marriott was somehow able to divine that the patrons traveling with Piggee were African-Americans and thus cancelled the contract because of a discriminatory reason. After all, Piggee told Bowman all of this information at the time that they negotiated the contract – which means that it was information at the Marriott's disposal *before* they entered into the agreement. The only piece of evidence that the Marriott did not have prior to its execution of the contract and obtained before cancelling the agreement was the rooming list – which, according to Piggee's testimony, did not contain any information about the students' race. And finally, even if I were to construe this as evidence that the Marriott was somehow on notice that Piggee and his group were African-Americans – which I do not – there is still absolutely no evidence that they cancelled the contract *because* they somehow figured that out. This evidence simply does not construct a convincing mosaic of discrimination. Piggee's efforts to prove discrimination under the direct method therefore fails.

So if his claims are to survive summary judgment, Piggee must proceed under the indirect method. The analysis under both Title II and Section 1981 is essentially the same, so I

will examine both claims together.  *Williams*, 2008 WL 1776461, at *8.  Piggee has to show that he is a member of a racial minority, that he attempted to make or enforce a contract, that the Marriott denied him the right to make or enforce the contract, and that the Marriott treated the plaintiff less favorably than similarly situated white people and permitted non-African-Americans to use the accommodation that the plaintiffs were denied.  *Williams*, 2008 WL 1776461, at *6;  *Hornick,* 708 F.2d at 325 n.8.

Again, there is no question that Piggee is black and that the Marriott denied him the ability to enforce his contract.  However, Piggee's § 1981 claim and his Title II claim are both doomed because he has presented no evidence whatsoever that his group was treated differently than similarly situated white patrons.  There is simply no evidence before me about anyone that stayed at the Marriott, whether they were black or white.  Piggee testified that he did not know of any policies or procedures that the Marriott implemented that excluded African-Americans and that he had no information to support a claim that the hotel applied different terms and conditions to non-whites as opposed to whites.  Piggee has presented no evidence that establishes that his group was treated any differently than those outside of their protected class.  Because of that, he cannot establish a *prima facie* case of discrimination, and his Title II and § 1981 claims cannot survive summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [DE 107] is hereby **GRANTED.** In light of this order, Defendants' Motion Requesting Oral Argument [DE 110] is **DENIED** as moot. The clerk shall **ENTER FINAL JUDGMENT** in favor of Defendants on Plaintiffs' Counts I and II. The Plaintiffs' Count III remains pending.

**SO ORDERED.**

Entered: September 18, 2012.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
